*159 The opinion of the Court was delivered by
Dargan, Ch.
The only breach of trust charged in the bill, is that the defendants accepted the trust, and took possession of the negroes and combining and confederating with A. Isaac McKnight, did aid, advise, assist and procure the removal of thirteen of the negroes, conveyed to them by the deed of trust. This charge was set forth with various changes and modifications as to language, namely, that this removal of the negroes, was with the approbation, advice, consent and procurement of the trustees, the defendants, and that the loss occasioned by said removal, ensued from their carelessness, negligence, and utter disregard of the rights^of the complainants.
To these charges, the defendants answered, and the cause proceeded to trial on the issue thus made. No sufficient evidence was adduced to sustain the allegations of the bill. A decree was rendered in behalf of the defendants, dismissing the bill. An appeal is now brought be'fore this court, and for the purpose of setting aside the decree, on an issue not presented in the pleadings, which the defendants were not called upon to answer, which the Circuit Court did not, and was not asked to consider, and about which, not one word was said on the circuit trial. Nor has the only question discussed on the circuit trial been mentioned or alluded to on this trial. Surely, a court that would entertain a ground of appeal made in this way, and under these circumstances, may be considered as indulgent. It must not be construed into an authoritative precedent for a similar loose practice. No objection was made from the adverse party. And it has been considered by the court ex gratia. I will now proceed to consider the ground of appeal (so called) which has been much discussed and insisted on in this court. The defendants are the trustees of a post nuptial marriage settlement of A. Isaac McKnight in favor of his wife Cecilia McKnight, and her children, who are the plaintiffs in this suit. The deed conveyed sundry negroes, and the trusts declared were, that the trustees should *160 hold the negroes for the sole and separate use of Mrs. McKnight and her children, and that they should receive the rents and profits and pay them over to her. I am stating the trusts of this deed substantively. The brief does not contain a copy, but I feel assured that I am stating the trusts of the deed, with sufficient precision, for every purpose of this appeal.
McKnight and his wife and children lived together. He had a plantation. Some of the trust negroes were domestic servants, and - served in the family. Others were field negroes, and children too small to work. The trustees permitted McKnight to remain in the possession of the negroes, some of whom were used as domestic servants and some were employed in field labor. Some of the negroes were sold by the Sheriff under executions that bound the property. Isaac McKnight absconded to parts unknown, and carried with him the -residue of the trust negroes, thirteen in number (I believe) and evaded the pursuit of the Sheriff, and of the agent of the trustees. This suit was first conceived with the view of making the trustees liable for conniving at, aiding, abetting and procuring the fraudulent abduction of the trust negroes by McKnight. Failing to make out by the evidence a case, that can excite even a suspicion of the .infidelity of the trustees in that regard, and changing their ground, they now contend, that without any connivance on their part, in the escape of McKnight, and his abduction of the negroes the bare fact of their permitting the trust property to remain in the possession'of McKnight, together with the loss of the negroes, is such a breach of the trust as to render them responsible to the plaintiffs for the value of the slaves. This Court is of opinion, that the simple fact relied on, is not sufficient to subject them to liability. The deed of trust did not inhibit such a course of management on the part of the trustees. Mrs. McKnight, the plaintiff, kept house. She had three little children. Surely the trustees could not have done better, than to allow her the use of her own domestic *161 servants, instead of-hiring them out to strangers, and with the proceeds of their hire, procuring other servants for Mrs. McKnight and her children. And if Mrs. McKnight, from convenience and for her comfort, could have, and was entitled to have the use of her domestic servants, so of the field hands, who were employed on a plantation whence the family supplies were derived. What is the difference, so far as a faithful execution of the trust is concerned ? Whether the trustees hired out these field negroes and from their wages procured Mrs. McKnight her necessary provisions, or suffered them to be employed directly in making those provisions, they (the trustees) having no complicity whatever with McKnight, in carrying the negroes off.
A deed like the one in question invests the trustees, with a sound and a very proper discretion, as to the mode of managing the property. If the husband misuses the wife, so. as to deprive her of the services of her negroes, or the proceeds of their labor, when employed in her immediate service, the trustees can interpose and it would be their duty to do so. In such a case by paying into her hands the income of her trust estate, they could secure to her some enjoyment of it. While the husband and wife live together, (and it is never the purpose of these trusts to sever the marriage ties,) she can not enjoy her separate property, without his participation. If her estate enables her to live in a fine house, furnished in a costly manner, he not only lives in it, but is master there, as regards the internal economy and management of the household. If she keeps a sumptuous table, he is more than a guest or dependant. He is entitled to preside at the head of his table and to enjoy the luxuries which her wealth and bounty supply, to fully as great an extent as she can possibly do. If she has troops of domestics, does law or propriety forbid that they should wait upon him ? Or if she has some slaves employed in making provisions for her household, where is the harm of the husband superintending and directing their field occupations, with the consent of the wife ? More particularly is this a proper view of the sub *162 ject when the trustees stand ready armed, with authority, to interpose whenever the misbehaviour or mismanagement of the husband render it necessary. McKnight was living in harmonious domestic relations with his wife and family. There was no suspicion that he was about to abscond and carry off the trust negroes. The removal of the property might have been effected even though he did not have the possession. In truth, at the time of the abduction the negroes may be considered to have been more immediately in the possession of Dr. Bradley, (the plaintiff's father) than that of McKnight, by virture of a power of attorney which the trustees had executed to Dr. Bradley for the purpose of enabling him to arrange with the Sheriff and the creditors of McKnight, who had claims upon the trust property.
To the Court it does not appear that there was any devas-tavit or breach of trust on the part of the trustees.
It is ordered and decreed that the decree be affirmed and the appeal be dismissed.
Dunkin, Wahdlaw, CC., concurred.

Appeal dismissed.